**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KAREN ANN BRESKO,

Plaintiff,

vs. Case No. 8:13-cv-1243-T30-AEP

M&T BANK CORPORATION,

Defendant.
_________________________________/

**DEFENDANT, M&T BANK CORPORATION'S**
**MOTION TO DISMISS THE COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant, M&T Bank Corporation ("M&T"), respectfully moves to dismiss Count II of the Complaint (the "Complaint") in its entirety and Count I to the extent that it is based on unanswered, missed telephone calls that Plaintiff allegedly received from M&T. The grounds supporting this motion are set forth in the following memorandum of law.

## BACKGROUND

Plaintiff commenced this action in state court seeking damages for alleged violations of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55 *et seq*., (Count I), and the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 (Count II), based on calls that M&T allegedly made to her cell phone after it knew she was represented by an attorney and after she had "revoked" her prior consent to receive such calls. M&T removed (ECF No. 1), asserting federal-question jurisdiction of Count II under 28 U.S.C. § 1331 and supplemental jurisdiction of Count I under 28 U.S.C. § 1367(a).

The Complaint (ECF No. 2) alleges that, on February 16, 2012, the law firm that represents Plaintiff in the current action put M&T "on notice of the firm's representation of Plaintiff in relationship to the collection of" a consumer debt, and at the same time "revoked any and all permission of [M&T] to call Plaintiff's mobile cell phone." Compl. ¶¶ 7, 10.[1]

The Complaint further alleges that M&T thereafter used automated dialing equipment to place calls to Plaintiff's cell phone. *Id*. ¶ 11. To support this allegation, Plaintiff refers to the Affidavit attached as Exhibit C to the Complaint, which in turn attaches a "call log" consisting of a series of entries (about 167) purportedly recording calls made to Plaintiff's cell phone between February 16, 2012 and November 20, 2012. *Id*. ¶ 11, Ex. C.[2] However, Plaintiff fails to identify the cell phone number to which these calls were allegedly made, and the "call log" indicates that none of the calls was actually answered by Plaintiff (although the caller allegedly left a voicemail message in a few instances [about 21 times]).

The Complaint asserts that these purported telephone calls from M&T over a nine-month period violated the TCPA and the FCCPA. *Id*. ¶¶ 16, 21. The Complaint also asserts that Plaintiff "suffered harassment, frustration, increased anxiety, emotional distress,

---

[1] To support these allegations, Plaintiff refers to documents attached as Exhibit B to the Complaint. The first page of Exhibit B appears to be some sort of confirmation of a two-page facsimile sent by Plaintiff's counsel's law firm to M&T. However, the only other document included in Exhibit B is a two-page letter (without the identifying information typically appearing on each page of a transmitted facsimile) addressed to M&T from other members of Plaintiff's counsel's law firm. Consequently, Exhibit B appears to be incomplete or inaccurate.

[2] Pinellas County public records show that Plaintiff's counsel represented Plaintiff in an action that was filed against Plaintiff in the Pinellas County Circuit Court, *M&T Bank v. Bresko*, No. 12-011424-CI—evidently, a foreclosure action—in September 2012, and that was voluntarily dismissed in February 2013. To the extent any of the alleged calls recorded in the "call log" relate to the foreclosure of a security interest in Plaintiff's condo, they are not actionable because they were not communications made in an attempt to collect a consumer debt. *See Brandt v. I.C. System, Inc*., No. 8:09–cv–126–T–26MAP, 2010 WL 582051 at *2 (M.D. Fla. Feb. 19, 2010); *cf. Cowan v. MTGLQ Investors, L.P*., No. 2:09–cv–472–FtM–29SPC, 2010 WL 3701779 (M.D. Fla. Sept. 14, 2010); *Warren v. Countrywide Home Loans, Inc*., 342 F. App'x 458 (11th Cir. 2009); *Trent v. Mortgage Electronic Registration Systems, Inc*., 618 F. Supp. 2d 1356 (M.D. Fla. 2007).

insomnia, embarrassment, intimidation and feelings of threat" as a result of the calls. *Id*. ¶ 12. Plaintiff seeks actual damages, statutory damages, and attorneys' fees under the FCCPA, and statutory damages under the TCPA. *Id*. at 2–3.

**LEGAL STANDARD**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a short and plain statement of the claims that fairly notifies the defendant of both the claim and the supporting grounds. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include factual allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A conclusory statement of the elements of a claim does not suffice. *Id*. Rather, legal conclusions "must be supported by factual allegations." *Id*. "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc*., 326 F.3d 1183, 1185 (11th Cir. 2003).

**ARGUMENT**

**I. Count II fails to state a claim under the TCPA.**

The TCPA generally makes it unlawful

> to make any call (other than a call made for emergency purposes or made with the *prior express consent* of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C.A. § 227(b)(1)(A) (2013) (emphasis added).

The Federal Communications Commission ("FCC") has determined that prior express consent to receive automated calls on a cell phone exists where the called party previously provided the cell phone number to a creditor—for example, as part of a credit application. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 564 (FCC 2008) (Declaratory Ruling). The FCC relied on its prior ruling that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id.* (quoting Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8769 (1992) ("1992 TCPA Order") (citing House Report, 102-317, 1st Sess., 102nd Cong. (1991) at 13 (noting that "in such instances the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications")). Almost all courts that have addressed the issue have accordingly held that voluntarily furnishing a cell phone number to a creditor constitutes express consent under the TCPA. *See Saunders v. NCO Fin. Sys., Inc.*, No. 12–cv–1750 BMC, 2012 WL 6644278, at *3 (E.D.N.Y. Dec. 19, 2012) ("[T]he authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent.") (citing cases).

In an apparent effort to avoid the statutory exemption allowing calls otherwise prohibited by the TCPA if the calls are made with the prior express consent of the called party, Plaintiff alleges that she "revoked" M&T's permission to call her cell phone. *See* Compl. ¶ 10; *cf.* Ex. B at 3 ("You *no longer* have permission to contact this consumer on any and all telephone numbers.") (emphasis added). This allegation implies that Plaintiff had

previously given such permission—presumably, in connection with the residential mortgage referenced in the Complaint. *See* Compl. Ex. C–1 (referencing a "Condo Mortgage").

Moreover, Plaintiff's purported "revocation" is unavailing. Two district courts have recently held that prior consent under the TCPA, once given, cannot be withdrawn. *See Gager v. Dell Fin. Servs., LLC*, No. 3:11-cv-2115, 2012 WL 1942079 (M.D. Penn. May 29, 2012) (dismissing a claim under Section 227(b)(1)(A)(iii) on the grounds that the TCPA does not permit a person to revoke his prior consent);[3] *Saunders v. NCO Fin. Sys., Inc.*, No. 12-cv-1750BMC, 2012 WL 6644278 (E.D. N.Y. Dec. 19, 2012) (same).

The *Gager* court acknowledged that other district courts had assumed that the TCPA and its implementing regulations authorize a revocation of prior consent, at least if it is in writing, but found no support for that assumption in the text of the statute or any FCC regulations or guidance. 2012 WL 1942079 * 3–6. For example, *Gager* construed that FCC's 1992 TCPA Order, which stated that knowingly releasing a telephone number constitutes an invitation or permission to be called at the number "absent instructions to the contrary," as indicating that instructions limiting or qualifying that consent should be provided, if at all, at the time a person releases the telephone number. *Id*. at *6.

Similarly, *Saunders* based its holding on (A) the absence of any provision in the TCPA that allows withdrawal of a voluntarily given, prior consent to call a cell phone number, and the impermissibility of a court's "read[ing] a substantive right into a statute when it is quite conspicuously missing," 2012 WL 6644278 at *4–5; (B) the presence of such

[3] The *Gager* decision is currently on appeal before the United States Court of Appeals for the Third Circuit. No. 12-2823 (filed June 28, 2012).

a provision in the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq*. ("FDCPA"), which demonstrates that Congress knows how to provide for revocation of consent when it wants to, *id*. at *5, and (C) the fact that a consumer–debtor who voluntarily waives the TCPA's "narrow statutory right" not to receive automated calls on a cell phone does not need an opportunity to change her mind later, because she remains protected from harassment by the FDCPA (and, we may add, by the FCCPA if she resides in Florida), *id*. at *4. Here, the Court should follow *Gager* and *Saunders* and hold that Plaintiff's purported revocation of her prior express consent was ineffective as a matter of law.

In short, if (as the Complaint implies) Plaintiff invited M&T to call her cell phone number by providing that number when she applied for credit, she cannot complain now about being called at that number. Accordingly, Count II should be dismissed.

## II. Count I fails to state a claim to the extent that it relies on unanswered, missed calls.

Fla. Stat. § 559.72(18) generally provides, that, in collecting consumer debts

> no person shall . . . *Communicate* with a debtor if the person knows that the debtor is represented by an attorney with respect to the debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

The FCCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." Fla. Stat. § 559.55(5).

Plaintiff alleges that M&T violated Section 559.72(18) "when it knowingly communicated with Plaintiff after it knew Plaintiff was represented by counsel in relationship

to collection of the alleged consumer debt . . . ." Compl. ¶ 16. In support of this legal conclusion, however, Plaintiff refers only to the February 16, 2012 facsimile and her "call log." But the majority of the entries in the "call log" evidently report unanswered, missed calls,[4] and convey no information other than the telephone number of the caller. Because these alleged calls (as reported) conveyed no information about a debt, they are nopt "communications" within the meaning of Section 559.55(5).

Several district courts have held that unanswered, missed calls are not communications within the meaning of the FDCPA, because they do not convey any information about a debt. *See Wilfong v. Persolve, LLC*, No. 10–3083–CL, 2011 WL 2678925, at *4 (D. Or. June 2, 2011) (finding no FDCPA violation based on unanswered telephone call following cease and desist letter because that "[t]he receipt of an unanswered telephone call does not constitute a 'communication' within the meaning of the FDCPA."), *report and recommendation adopted*, 2011 WL 2601559 (D. Or. June 30, 2011); *Worsham v. Acct. Receivables Mgmt., Inc.*, No. No. JKB–10–3051, 2011 WL 5873107, at *3 (D. Md. Nov. 22, 2011) (dismissing FDCPA claim based in part on holding that unanswered telephone calls "can hardly be considered 'communications' under the FDCPA), *aff'd on other grounds*, 497 F. App'x 274 (4th Cir. 2012).[5]

---

[4] Under the heading "Conversation Notes" or "Conver." (or the corresponding column on other pages), most of the entries read "No" or "None" or have no comment at all. *See* Ex. C–1 *passim*.

[5] *But cf. Cerrato v. Solomon & Solomon*, No. 11 Civ. 623(JCH), 2012 WL 6621339, at *4–6 (D. Conn. Dec.18, 2012) (unanswered calls constituted "communications" under the FDCPA where the debt collector's name and telephone number appeared on called-party's caller identification display and the debt collector had previously called the plaintiff 117 times from that number).

Because they construed an identical definition of "communication" in the FDCPA,[6] and because federal decisions construing the FDCPA are entitled to great weight in construing the FCCPA,[7] the Court should follow these well-reasoned decisions and hold that, to the extent Count I purports to rely on unanswered, missed telephone calls, it fails to state a claim under the FDCPA.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Count II in its entirety and Count I to the extent it asserts a claim under Section 559.72(18) based on unanswered, missed telephone calls.

Dated: May 13, 2013

Respectfully submitted,

/s/ Andrew J. Patch

David B. Weinstein
Florida Bar No. 604410
weinsteind@gtlaw.com
Andrew J. Patch
Florida Bar No. 0091577
patcha@gtlaw.com
**GREENBERG TRAURIG, P.A.**
625 East Twiggs Street, Suite 100
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
*Trial Counsel for Defendant,*
*M&T Bank Corporation*

[6] *See* 15 U.S.C. § 1692a(2) ("The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium.").

[7] *See* Fla. Stat. § 559.77(5) ("In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.").

**CERTIFICATE OF SERVICE**

I certify that on May 13, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

/s/ Andrew J. Patch
Attorney